# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

TOMMY LEFTWICH,

    Plaintiff,

v.

CITY OF PITTSBURG, KANSAS, et al.,

    Defendants.

Case No. 16-2112-JWL-GLR

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion to Enforce Discovery (ECF 64). Plaintiff seeks production of documents withheld by Defendants upon grounds of attorney-client privilege.[1] For the reasons below, the Court grants in part and denies in part Plaintiff's motion.

### I. Legal Standard(s)

Magistrate Judge O'Hara succinctly described this district's treatment of attorney-client privilege in *In re Syngenta Ag Mir 162 Corn Litigation*:[2]

> Fed. R. Civ. P. 26(b)(1) limits discovery to "nonprivileged matters." Because this litigation arises out of a federal statutory scheme, federal law governs the application of the attorney-client privilege.[3] Under federal common law, the essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived.[4] Although this description suggests that the privilege only operates to protect the

---

[1] Plaintiff also raises a second, but largely ancillary, issue regarding Defendants' duty to preserve electronically stored information. Because this issue largely overlaps with Plaintiff's second motion to compel (ECF 68), and in light of the dispositive motion deadline, the Court will consider Plaintiff's second issue in addressing his second discovery motion. The Court thus denies without prejudice the instant motion with respect to the duty-to-preserve discovery.

[2] No. 14-MD-2591-JWL, 2017 WL 386835, at *4 (D. Kan. Jan. 27, 2017).

[3] Fed. R. Evid. 501; *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009).

[4] *New Jersey*, 258 F.R.D. at 425.

client's communications to a lawyer, the Tenth Circuit recognizes that a lawyer's communication to a client is also protected if it is "related to the rendition of legal services and advice."[5] The party asserting the privilege bears the burden of establishing that the elements are met.[6]

Caselaw in this district provides a wealth of guidance as to what is—and is not—protected by the attorney-client privilege. First, it is important to note that "personal, confidential, [or] private information" is not necessarily privileged.[7] "As this Court has held repeatedly, 'confidential' does not equate to 'nondiscoverable' or privileged."[8] Second, it is clear that "[u]nderlying facts are not protected by the privilege."[9] "Similarly, neither the acts or services performed by an attorney during the course of his representation, nor the scope of representation, are within the attorney-client privilege because they are not 'communications.'"[10] Nor are "general topics of attorney-client discussions" or ultimate "legal conclusions" of counsel protected.[11] Thus, for example, this court has held that the subject matters of an in-house attorney's discussions with company executives are not privileged.[12]

Finally, it bears mentioning that under the eighth element, absence of waiver, the party claiming the privilege must demonstrate that "the substance of an otherwise privileged communication" is not revealed to a third party.[13] The burden of showing that the privilege has not been waived remains with the party

---

[5]*Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997) (rejecting narrower view that only communications that reveal confidences from the client are protected); *see also id.* (holding that the Tenth Circuit's view "protects from forced disclosure any communication from an attorney to his client when made in the course of giving legal advice"); *C.T. v. Liberal Sch. Dist.*, Nos. 06-2093, 06-2360, 06-2359, 2008 WL 217203, at *2 (D. Kan. Jan. 25, 2008) ("The privilege also protects advice given by the lawyer in the course of representing the client."); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 2192885, at *5 (D. Kan. July 25, 2007) ("The privilege applies to communications from the client to the attorney and from the attorney to the client.").

[6]*Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 618 (D. Kan. 2001).

[7]*AKH Co., Inc. v. Universal Underwriters Ins. Co.*, No. 13-2003, 2014 WL 2760860, at *7 (D. Kan. June 18, 2014).

[8]*Id.* (quoting *Williams v. Evogen, Inc.*, No. 12–2620, 2013 WL 3773840, at *3 (D. Kan. July 17, 2013)).

[9]*Sprint Commc'ns Co., L.P., v. Comcast Cable Commc'ns, LLC,* Nos. 11-2684, 11-2685, 11-2686, 2014 WL 545544, at *4 (D. Kan. Feb. 11, 2014) (quoting *Williams v. Sprint/United Mgmt. Co.*, No. 03–2200, 2006 WL 1867478, at *10 (D. Kan. July 1, 2006)).

[10]*Id.* at *6 (quoting *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005)).

[11]*Id.* (holding that counsel's ultimate legal conclusion that defendants infringed patent was not the type of substantive communication protected by the attorney-client privilege).

[12]*See, e.g., id.* at *8 (holding that revelation of in-house counsel's discussion with company executives about possible infringement by competitors did not reveal privileged information); *New Jersey v. Sprint Corp.*, 258 F.R.D. at 426–28 (holding that testimony stating that company's board of directors discussed legal advice of counsel about two specific topics and then acted a certain way did not result in waiver of the attorney-client privilege because it did not reveal the substance of the legal advice).

[13]*In re Quest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir.1990)).

claiming the privilege.[14] "Because confidentiality is key to the privilege, '[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.'"[15]

Generally, the withholding party submits a privilege log, the contents of which may vary in both substance and format. Courts in this district require a privilege log, relating to documents, to include:

> (1) A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;
> (2) The date upon which the document was prepared;
> (3) The date of the document (if different from # 2);
> (4) The identity of the person(s) who prepared the document;
> (5) The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;
> (6) The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"
> (7) The number of pages of the document;
> (8) The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and
> (9) Any other pertinent information necessary to establish the elements of each asserted privilege.[16]

The objecting party must provide enough information in the privilege log to enable the withholding party, and the Court, to assess each element of the asserted privilege and determine

---

[14] *New Jersey,* 258 F.R.D. at 426; *Lewis,* 203 F.R.D. at 621.

[15] *In re Quest Commc'ns Int'l Inc.*, 450 F.3d at 1186 (quoting *Ryans*, 903 F.2d at 741).

[16] *BridgeBuilder Tax + Legal Servs., P.A. v. Torus Specialty Ins. Co.*, No. 16-2236-JWL-GEB, 2017 WL 914809, at *4 (D. Kan. Mar. 8, 2017) (citations omitted).

its applicability.[17] Failure to provide supporting details in the privilege log may result in denial of the privilege.[18]

## II. Discussion

Plaintiff's Motion to Enforce Discovery (ECF 64) seeks discovery of documents for which Defendants have asserted attorney-client privilege. Defendants have listed 53 documents on their amended privilege log (ECF 66-1 at 5-8), totaling approximately 70 pages.[19] As an initial matter, the Court is satisfied that the parties have sufficiently conferred as required by D. Kan. Rule 37.2 and Fed. R. Civ. P. 37(a)(1).

Defendants, as the withholding parties asserting privilege, bear the burden to show attorney-client privilege as to each document. While their showing of each document's purpose (number six in the requirements, stated above) could be less conclusory and provide more evidentiary support, the Court finds their privilege log complies with the standard set in this district. It thus establishes the elements of attorney-client privilege. The relevant question then is whether Defendants have waived the privilege.

Both Plaintiff and Defendants have cited *Heglet v. City of Hayes, Kansas* in support of their respective positions.[20] Because *Heglet* is very similar to this case, both in form and in substance, the Court will address its applicability. Like here, the plaintiff Heglet sued both her former employer, the City of Hays, Kansas, and individual defendants, including the City Manager and Chief of Police, for wrongful termination of her employment. She alleged she was terminated in violation of her First Amendment rights for submitting an affidavit in a fellow

---

[17] *See id.*; *see also* Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii).

[18] *BridgeBuilder*, 2017 WL 914809, at *4.

[19] Defendants entirely withdrew privilege on four documents and produced redacted versions of several others.

[20] No. 13-2228-KHV/KGG, 2014 WL 1094458 (D. Kan. Mar. 19, 2014).

officer's civil case against the same defendants. Defendants in *Heglet* raised two issues of attorney-client privilege. They involved (1) voluntary disclosure of the legal advice received; and (2) reliance by the defendants upon a city attorney's advice to justify their actions. This placed at issue the discoverability of both the advice they sought and the advice they received. Those are the same issues that the present motion raises. The Court will address them in reverse order.

### A. Have Defendants put the legal advice sought and received at issue by relying on the City Attorney's advice to justify their actions?

Plaintiff contends Defendants have shown their reliance on counsel to be a sword in the litigation—i.e. justifying their actions by referring to their consultation with the City Attorney—and are therefore precluded from concurrently utilizing the attorney-client privilege as a shield. Defendants agree they cannot assert the privilege as both sword and shield. But they deny using it as a sword in this case. The Court must decide, therefore, whether or not they have waived the privilege by relying on protected legal advice as part of their defenses.

In the absence of Tenth Circuit precedent, courts in this district have adopted the waiver test applied in *Hearn v. Rhay*.[21]

> Under the Hearn test, each of the following three conditions must exist to find waiver: (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to its defense. A court, then, should find that the party asserting a privilege has impliedly waived that privilege through his own affirmative conduct when the party "places information protected by it in issue through some

---

[21] 68 F.R.D. 574 (E.D.Wash.1975); *see also Heglet v. City of Hays, Kan.*, No. 13-2228-KHV/KGG, 2014 WL 1094458, at *3 (D. Kan. Mar. 19, 2014); *New Jersey v. Sprint Corp.*, 258 F.R.D. 421 (D. Kan. 2009) (citing *Williams v. Sprint/United Management Co.*, 464 F.Supp.2d 1100 (D. Kan. 2006)) ("Although the Tenth Circuit has not chosen one of the approaches to waiver, Judge Lungstrum held, and the undersigned agrees, that the Tenth Circuit would likely adopt the intermediate approach as applied by the court in *Hearn* . . .").

> affirmative act for his own benefit, and to allow the privilege to
> protect against disclosure of such information would [be]
> manifestly unfair to the opposing party."[22]

Defendants essentially argue that the first condition is not met, because they have not taken an affirmative act to put the privileged information at issue by making it relevant to the case. Plaintiff, however, suggests their assertion of the defense of qualified immunity is itself an affirmative act. Qualified immunity serves "to protect public officials who act in good faith, on the basis of objectively reasonable understandings of the law at the time of their actions, from personal liability on account of later-announced, evolving constitutional norms."[23] Defendants contend they have "made it abundantly clear that Defendants do not intend to rely on advice or counsel from the city attorney in furtherance of [their defense(s)] . . . Defendants are not relying on the privileged legal advice from the city attorney as part of any defense in this case and have not otherwise put the legal advice at issue."[24]

The mere assertion of a defense, here qualified immunity, does not operate to waive the privilege. Similar to *Heglet*, there is here no clear showing that Defendants have gone further than to merely assert the defense. If Defendants assert that their consultation with the City Attorney caused or justified their conduct (which, as quoted above, they adamantly deny they will do), that affirmative act would waive the privilege. At this point, however, Defendants have not waived attorney-client privilege by merely asserting a defense of qualified immunity.

**B. Did Defendants Voluntarily Disclose the Legal Advice They Received?**

Plaintiff next argues that Defendants have voluntarily disclosed the legal advice they received. In support of his contention, he points to their deposition testimony and their

---

[22] *New Jersey*, 258 F.R.D. at 430 (quotations and citations omitted).

[23] *Heglet*, at *4 (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1299 (10th Cir.2004); *Marcus v. McCollum*, 394 F.3d 813, 823 (10th Cir. 2004).

[24] ECF 66 at 10-11.

production of a letter they sent to the EEOC. Plaintiff cites the deposition of Co-Defendant Police Chief Hulvey, as follows:

> (Plaintiff's Counsel) Q. Meaning -- let me rephrase that. Why with Mr. Leftwich was the process in reverse, meaning the decision was made to terminate him first and then a directive was given to document him and look for policy violations that he may have violated?
>
> Defense Counsel: Object to the form.
>
> (Chief Hulvey) A. In the discussion I had with Daron Hall and in consultation with our attorneys it was determined that progressive discipline would not be used, and that -- that we would proceed forward with the termination in lieu of using progressive discipline.
>
> Q. So why didn't you tell Mr. Leftwich, look, we're not really concerned about what policies fit, but you're fired?
> A. Because I was directed to review policy.
>
> Q. And you were directed by the city attorney, is that right?
> A. City manager to review policy.
>
> Q. Okay. And you referenced attorney, meeting with attorney, and you were advised to terminate him without progressive discipline. What attorney are you referring to?
>
> [Defense objection & Reporter read back]
>
> Q. What attorney?
> A. Our city attorney Henry Menghini.
>
> Q. Okay. And when did you have this consultation with Mr. Hall and Mr. Menghini?
> A. I don't recall. I believe there's an e-mail back and forth at some point. I don't recall when we had that conversation.
>
> Q. And you were both in -- was it the three of you? You, Mr. Hall, and the city attorney?
> A. I don't recall who -- who all would have been present, but I know that we discussed –

> Defense Counsel: I don't want you to tell any-- we're not talking about what Mr. Menghini told you.[25]

The second piece of evidence is what Defendants stated in their position statement to the EEOC, which says, in pertinent part:

> City Attorney Henry Menghini met with Hall, Hulvey and Fry, reviewed the information presented and concurred with Hulvey's decision to terminate Leftwich.
> . . .
> Hall, Fry, Hulvey and Menghini all agreed Leftwich would be terminated the following morning at the beginning of his shift. The agreed reasons for the termination included: (1) insubordination in that Leftwich did not allow for the City to investigate his allegations in a professional and orderly manner but proceeded to go outside the chain of command, conducting his own investigation, spreading rumors, asking questions, contacting outside agencies and (2) Leftwich created an unreasonable disruption within the police department when he hounded officers Romaine and Christensen for information, and when he incited other officers to gossip and dig for information. On February 22, 2014, Chief Hulvey and Lt. Tompkins met with Leftwich and informed him his employment with the City was terminated effective immediately.
> . . .
> Leftwich wanted his job back and complained he was "un-hireable." After the meeting Hall and Menghini met and agreed to give Leftwich the opportunity to resign. Leftwich refused.[26]

Plaintiff argues that the deposition testimony and the statements in the EEOC position statement voluntarily divulge the legal advice received; because they show not only that the City Attorney agreed with the decision to terminate Plaintiff, but also that he revealed the reasons underlying his concurrence and agreement.

---

[25] ECF 64 at 10-11 (emphasis removed).

[26] (ECF 64-11 at 11-12.)

*Heglet* is almost squarely on point. The *Heglet* defendants included a document entitled "Timeline with [Heglet]" in plaintiff's employee file, which was turned over in discovery. The timeline contained the following:[27]

| 5/10/2012 | City Hall Commission Chambers | Peter Maharry & I | I was contacted on my phone by Peter Maharry and was questioned about an affidavit that Firma had signed in the Dryden lawsuit. I was surprised to learn that she had signed an affidavit and that she was listed as a potential witness for the plaintiff. I requested a copy of the affidavit. I received a copy of the on 05/10/2012. I reviewed the affidavit and I notified CMO, HR and Brian. I spoke with John Bird and he agreed with concerns about confidentiality. John Bird spoke with Peter and then called me back and he stated that the City would be justified in moving forward. |
|---|---|---|---|
| 5/10/2012 | Chief of Police Office | Brian, Firma & I | Met with Firma and she admitted that she signed the affidavit and on April 22nd. She said the information was based on conversations she had with Assistant Chief Philip Hartsfield. It is my opinion that she has released information that could only have been obtained through her job as the Admin Sec. I spoke Brian and we did not give her permission to release any info. |
| 5/11/2012 | City Managers Office | Toby, Paul, Erin & I | Discussed the issue and the decision was made for the City of Hays to move in a different direction. Job performance, improper use of city time and equipment, not a team player, and trust issue were discussed. |
| 5/11/2012 | John Bird's Office | Brian, John & I | Met with John in his office to discuss the Hays Police Department and FHSU. Confirmed again that he was ok with the City of Hays terminating Firma. |

(Case No. 13-2228 ECF 21-6 (highlighting in original).) Heglet argued defendants waived the attorney-client privilege "by voluntarily disclosing the advice they received, and by placing it into [plaintiff's] personnel file as the justification used to fire" her.[28] The defendants argued it merely disclosed the fact that conversations with counsel occurred regarding the general topic of Heglet's involvement in the other suit. The Court considered the pivotal question: whether the above constituted substantive legal advice or merely disclosures of the fact that advice was obtained. On this issue, Magistrate Judge Gale wrote:

---

[27] For reference, John Bird and Peter Mahany are city attorneys, and the person who composed the timeline is the defendant Chief of Police.

[28] *Heglet*, at *2.

9

> The Court finds that the disclosure in this case included the substance of the attorney's conclusions. Although the time line entry is brief, there is a substantive recitation of the legal advice given to Defendants. The entry indicates that Scheibler spoke with counsel regarding "concerns about confidentiality," and counsel agreed. Counsel also told Scheibler that "the City would be justified in moving forward." This is not a simple disclosure that a consultation was obtained, but reveals the legal advice rendered. Thus, Defendants voluntary waived the privilege as a result of producing this document in this case, and the Plaintiff's motion is **GRANTED** on that basis.[29]

The Court finds that Judge Gale's analysis applies here. Defendants voluntarily produced the substance of the City Attorney's advice by stating not just the outcome of their consultation with the City Attorney—i.e. the decision to terminate Plaintiff—but also the reasons justifying the termination. Judge Gale relied on the Police Chief's disclosure of the attorney's statement that, after he spoke with relevant persons, "the City would be justified in moving forward." That statement compares with Chief Hulvey's testimony here that, after consulting with relevant persons and her attorneys, "it was determined we would proceed forward with the termination in lieu of using progressive discipline." Furthermore, discussing whether to use progressive discipline and the two specific reasons underlying Plaintiff's termination to which the City Attorney agreed, goes beyond merely disclosing that an attorney was consulted. It indeed reveals the legal advice rendered: As to progressive discipline, a choice of alternatives; as to ultimate termination, a confirmation that these two specifically enumerated reasons are enough to justify moving forward with termination of Plaintiff's employment. Finally, while *Heglet* did not explicitly refer to the Police Chief's disclosure that attorney John Bird "[c]onfirmed again that he was okay with the City of Hays terminating [plaintiff]," the Court finds that statement equates with the repeated confirmations here that City Attorney Menghini concurred and agreed

---

[29] *Id.* at *3 (emphasis in original) (internal citations omitted).

with terminating Plaintiff. The Court therefore finds that Defendants did voluntarily waive the privilege by disclosing such advice in their position statement to the EEOC, a third party, and/or producing that position statement in this case. The Court also finds that Chief Hulvey, though perhaps inadvertently, waived the privilege by talking about whether or not to proceed with progressive discipline during a consultation with the City Attorney (and the City Manager).

Although Defendants have waived an attorney-client privilege, it does not follow that Plaintiff is necessarily entitled to production of all the documents he has requested. He seeks everything on Defendants' amended privilege log. Attorney-client privilege, however, "is to be extended no more broadly than necessary to effectuate its purpose."[30] The motion addresses the advice City Attorney Menghini gave the Police Chief and City Manager *before* terminating Plaintiff. Both the deposition testimony and the excerpts from the EEOC letter indicate that some of the documents may be subject to production, others not. Thus, the Court directs Defendants to produce to Plaintiff documents numbers one through twelve on the Amended Privilege Log. These twelve documents are the only privileged documents on or before the date of Plaintiff's termination. The Court does not find that communications, if any, between the City Attorney and a Defendant after the date of Plaintiff's termination, are necessarily subject to production. However, the Court will conduct an in camera review as to the remaining documents on Defendants' Amended Privilege Log. If any of the remaining documents are deemed responsive, the Court will order their production. But if the documents are not deemed responsive, they still could be compelled at a later date if a Defendant were to take some affirmative step to waive the privilege as to them.

---

[30] *New Jersey*, 258 F.R.D. at 425 (citations omitted).

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Enforce Discovery (ECF 64) is granted in part and denied in part. The motion is granted with respect to attorney-client privilege as discussed herein; it is denied as to discovery regarding Defendants' duty to preserve electronically stored information, as that issue will be decided by the Court in a future Memorandum and Order addressing Plaintiff's second discovery-based motion.

**IT FURTHER ORDERED** that, on or before April 21, 2017, Defendants shall produce documents numbered 1 through 12 on its Amended Privilege Log to Plaintiff. Defendants shall produce to the Court the remaining documents for in camera review on or before April 21, 2017.

Dated April 12, 2017, at Kansas City, Kansas.

*S/ Gerald L. Rushfelt*
Gerald L. Rushfelt
U.S. Magistrate Judge