# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

TOMMY LEFTWICH,

    **Plaintiff,**

v.

CITY OF PITTSBURG, KANSAS, et al.,

    **Defendants.**

Case No. 16-2112-JWL-GLR

## **ORDER**

Plaintiff filed a motion to enforce discovery, requesting documents that Defendants withheld under attorney-client privilege. The Court granted the motion and ordered Defendants to produce (a) to Plaintiffs the first twelve documents on their privilege log, and (b) to the Court, for in camera review, the remaining documents on their privilege log. (ECF 88.) Defendants have complied. In the meantime, and based in part on the twelve documents he received, Plaintiff filed a Motion for Leave to File Supplement (ECF 97), arguing the Court should simply order production of all documents on the amended privilege log.[1] The Court here rules as to what other documents,[2] if any, Defendants must produce to Plaintiff.

## I. Background

Plaintiff's motion to compel drew a clear line between communications before Plaintiff's termination and those after his termination.[3] He sought production upon the grounds that "the City Attorney was not giving legal advice, rather he was providing business advice, was acting

---

[1] The Court treats ECF 97 as a new motion to compel (*See* ECF 102). Thus, the Court will rule on ECF 97, even though the Court previously granted it in ECF 102.

[2] Throughout this Order, the Court will use document and communication interchangeably, unless otherwise specified.

[3] *See* ECF 64.

as a decision maker."[4] The Court drew a similar line in its Order,[5] and directed Defendant to produce to Plaintiff twelve documents dated before Plaintiff's termination.

However, as to those documents that post-date Plaintiff's termination, the Court ordered an in camera review of them. This recognized that post-termination communications may be extensions of communications and/or decisions made before Plaintiff's termination while the City Attorney was acting in a *business* capacity. In contrast, some communications may not be extensions of the pre-termination discussions, but instead focus on handling the aftermath, such as discussing with the City Attorney how to address Plaintiff's appeal of his termination. Such communications relate to legal advice in defense of a decision *already made*.

Before the Court concluded its in camera review, Plaintiff filed a Motion for Leave to File Supplement (ECF 97). He thereby proposed that everything in camera should be produced for the reason Defendants had waived the attorney-client privilege as to the entire subject-matter. The Court granted him leave to file the supplement, which he did.[6] The motion is now fully briefed, and the Court is prepared to rule.

## II. Legal Standard

"Not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice."[7] Attorney-client privilege "does not protect disclosure of the underlying facts by those who communicated with the attorney."[8] In practice, the privilege applies if the legal advice predominates the

---

[4] ECF 64 at 9.

[5] ECF 88.

[6] ECF 105. Though per the Court's Order (ECF 102), the Court was treating ECF 97 as the motion. Plaintiff nevertheless filed ECF 105. For all intents and purposes, they are the same.

[7] *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 443 (D. Kan. 2009) (citing *Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997)).

[8] *Id.* at 444.

communication; if the legal advice is merely incidental to business advice, the privilege does not apply.[9] More specifically, general topics of attorney-client discussions are not protected.[10] Nor are the subject matters of an in-house attorney's discussions with company executives privileged.[11]

Federal Rule of Evidence 502 addresses subject matter waiver with respect to attorney-client privilege. The rule is one of evidence, rather than what may be disclosable in discovery. "Subject-matter waiver is limited to situations in which intentionally disclosed communication or information 'ought in fairness . . . be considered together' with undisclosed communication or information concerning the same subject matter."[12] In federal proceedings, privilege to undisclosed communications is waived only if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."[13] There is also no bright line rule for determining subject-matter waiver; rather, courts generally consider (1) the circumstances of the disclosure, (2) the nature of the legal advice sought, and (3) the prejudice to the parties of permitting or prohibiting further disclosures.[14]

---

[9] *Id.*

[10] *Sprint Commc'ns Co., L.P., v. Comcast Cable Commc'ns, LLC,* Nos. 11-2684, 11-2685, 11-2686, 2014 WL 545544, at *4 (D. Kan. Feb. 11, 2014) (quoting *Williams v. Sprint/United Mgmt. Co.*, No. 03–2200, 2006 WL 1867478, at *10 (D. Kan. July 1, 2006)) (holding that counsel's ultimate legal conclusion that defendants infringed patent was not the type of substantive communication protected by the attorney-client privilege)).

[11] *See, e.g., id.* at *8 (holding that revelation of in-house counsel's discussion with company executives about possible infringement by competitors did not reveal privileged information); *New Jersey*, 258 F.R.D. at 426–28 (holding that testimony stating that company's board of directors discussed legal advice of counsel about two specific topics and then acted a certain way did not result in waiver of the attorney-client privilege because it did not reveal the substance of the legal advice).

[12] *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2011 WL 322675, at *3 (D. Kan. Jan. 31, 2011) (quoting Fed. R. Evid. 502(a)).

[13] Fed. R. Evid. 502(a).

[14] *Sprint Commc'ns Co. L.P. v. Comcast Cable Comm's LLC*, No. 11-2684-JWL, 2014 WL 3611665, at *4 (D. Kan. July 22, 2014) (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349–50 (Fed. Cir. 2005) (collecting cases) (citations omitted)).

**III. Discussion**

Plaintiff requests production of all communications regarding City Attorney Menghini. Plaintiff argues his termination and his appeal of the termination constitute the same subject-matter, and therefore the Court should find attorney-client privilege waived as to all of the documents under *in camera* review. In support, he relies on some of the twelve documents on Defendants' amended privilege log that the Court previously ordered produced.[15] He specifically points to an email from City Attorney Menghini to Police Chief Mendy Hulvey, in which Menghini writes that he, along with City Manager Daron Hall, agree Plaintiff should only be given the reasons for termination if he files a grievance.[16]

Defendants contend waiver of attorney-client privilege as to the entire subject-matter is not warranted in this case because Plaintiff's termination and his appeal of that termination are separate and distinct matters. Defendants make two specific arguments in support of their position: (1) The City of Pittsburg, Kansas' policy for involuntary termination (Policy 817) and its policy for appeals of involuntary termination (Policy 812) are entirely separate. (2) Defendants are not defending the suit by relying on the City Attorney's legal advice.

The Court finds the arguments of Defendants unpersuasive. Contrary to their assertion, it does not conclude that the termination of Plaintiff and his appeal of it are separate and distinct matters for all purposes.[17] Defendants correctly note that these procedures are covered by two different documents with different policy numbers. But the policies are nevertheless very much

---

[15] *See* ECF 88.

[16] *See* ECF 105-2.

[17] Defendants are correct that the Court drew a distinction between Plaintiff's termination and his appeal of his termination. However, there are a couple important differences. First, the Court did not have the benefit of *in camera* review of the documents. Second, the Court has now seen the City's policies regarding Plaintiff's termination and appeal, and it finds they are clearly related.

4

related.[18] They provide that the City Manager be necessarily involved in both the decision to terminate and in the final decision upon appeal of that termination. Much of the discovery has already pointed to the City Manager's role in deciding to terminate Plaintiff. The evidence the Court has seen supports the conclusion that he was, at the very least, involved in the decision to terminate. No one disputes, moreover, that City Manager Hall issued the final and binding written decision, regarding Plaintiff's appeal of his termination.

Of further support is the fact that, contrary to Policy 817, Defendants neither supplied Plaintiff with the reasons for his termination until he appealed the decision, nor gave him the opportunity to refute the facts or argue against termination. They instead provided him with the reasons for his termination when he appealed. And, as evidenced by the email he cites, Defendants intended to give him those reasons only *if* Plaintiff appealed. Put simply, these two events—Plaintiff's termination and his appeal of that termination—constitute the same subject matter.

Defendants' second argument is equally unavailing. Their argument is based, in part, upon the Court's Order for in camera review.[19] The Court held:

> The mere assertion of a defense, here qualified immunity, does not operate to waive the privilege. Similar to *Heglet* [*v. City of Hays, Kan.*, No. 13-2228-KHV/KGG, 2014 WL 1094458, at *3 (D. Kan. Mar. 19, 2014)], there is here no clear showing that Defendants have gone further than to merely assert the defense. If Defendants assert that their consultation with the City Attorney caused or justified their conduct (which, as quoted above, they adamantly deny they will do), that affirmative act would waive the privilege. At this point, however, Defendants have not waived attorney-client privilege by merely asserting a defense of qualified immunity.[20]

---

[18] The relation of Policy 817 (Involuntary Termination of Employment) and Policy 812 (Appeals Process) is plain on their face. *Compare* ECF 97-1 at 28 *with* ECF 110-2 at 2.

[19] ECF 88.

[20] ECF 88 at 6.

True enough, Defendants did not assert a defense, based upon the City Attorney's legal advice, before or after Plaintiff's termination; and they reiterate their intent *not* to rely on the advice at trial. But this does not end the issue because the Court found Defendants voluntarily waived attorney-client privilege by disclosing legal advice in their position statement to the EEOC, a third party, (and/or producing that position statement in this case) and disclosing in depositions whether or not to proceed with progressive discipline during a consultation with the City Attorney and the City Manager.

Given these facts, the Court finds that Defendants did waive the attorney-client privilege, that the communications pertain to the same subject matter, and that fairness dictates disclosure of such communications. The Court also bases its ruling upon its benefit of having completed *in camera* review in this case. That is also why the Court finds there is little, if any, prejudice to Defendants in disclosing these communications. Indeed, Defendants have stated they will not rely on Menghini's legal advice as a defense.

**IT IS THEREFORE ORDERED BY THE COURT** that, Plaintiff's Motion for Leave to File Supplement (ECF 97) is granted. On or before June 5, 2017, Defendants shall produce all documents provided for in camera review, as well as any attorney-client communications relating to the termination or appeals process that do not, for whatever reason, appear on Defendants' amended privilege log.

Dated May 23, 2017, at Kansas City, Kansas.

> *S/ Gerald L. Rushfelt*
> Gerald L. Rushfelt
> U.S. Magistrate Judge